UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID MACHLAN,<br><br>      Plaintiff,<br><br>   v.<br><br>PROCTER & GAMBLE COMPANY, et al.,<br><br>      Defendants. | Case No. 14-cv-01982-JD<br><br>**ORDER RE DEFENDANTS' MOTIONS TO DISMISS**<br><br>Re: Dkt. Nos. 23, 25 |

In this consumer class action, named plaintiff David Machlan alleges that defendants Procter & Gamble Company ("P&G") and Nehemiah Manufacturing Company ("Nehemiah") deceptively marketed several lines of personal wipes as "flushable" when in fact they were not. After jointly removing the action, P&G and Nehemiah moved to dismiss the complaint. The Court grants the motions in part and denies them in part.

**BACKGROUND**

Plaintiff alleges in his class action complaint that "[d]efendants deceptively market several lines of personal hygiene moistened wipes ('wipes') as 'flushable.' They charge a premium for these wipes, as compared to both toilet paper and to wipes that are not marketed as 'flushable.'" Dkt. No. 1-1 ¶ 1. According to plaintiff, defendants do not tell consumers that the allegedly "flushable" wipes are "not suitable for disposal by flushing down a toilet as they routinely damage or clog pipes, septic systems, and sewage pumps; they do not disperse, disintegrate, or biodegrade like toilet paper; and they are not regarded by municipal sewage systems as appropriate to flush down a toilet." *Id.* Plaintiff quotes, for example, the East Bay Municipal Utility District's statement to consumers that "'[d]isposable' and 'flushable' wipes and other products don't break down in the sewer" and instead "get tangled and clumped in hair and debris creating massive

obstructions in the sewers," and that such wipes should therefore "<u>never</u> be flushed." *Id*. ¶ 30 (emphasis in original).

Two types of wipes are at issue in this case: the Charmin Freshmates flushable wipes ("Charmin wipes") and the Pampers Kandoo flushable wipes ("Pampers wipes"). *Id*. ¶ 19. The Pampers wipes are marketed as being intended for toddlers and to assist with potty training; the Charmin wipes are alleged to have been marketed more generally for use "as part of a bathroom routine." *Id*. ¶¶ 18, 40-41.

Plaintiff alleges that defendants played different roles for the two kinds of wipes. The complaint states that P&G "manufactures and markets the Charmin Wipes." *Id*. ¶ 20. Nehemiah is not alleged to have had any involvement with the Charmin wipes. For the Pampers wipes, plaintiff alleges that P&G "invented" them and "invested in the initial research and development and marketing of those wipes," but that since 2009, P&G "had shared responsibility with Nehemiah for the manufacturing and/or marketing of the product." *Id*. ¶ 21. More specifically, plaintiff alleges that Nehamiah is a participant in P&G's "Connect + Develop" program in which P&G partners with smaller manufacturers, and that Nehamiah is a licensee for the Pampers Kandoo product. *Id*. ¶¶ 17-18.

Plaintiff's interactions with the two wipes is also different. His complaint alleges only that he bought the Pampers Kandoo wipes. He purchased one 350-count package for $11.09 in January 2014, and began using them. *Id*. ¶ 74. According to the complaint, "[a]fter his children went to the bathroom, he would use 1-2 wipes to clean and dry them. He immediately had problems flushing the wipes, as the toilet clogged and backed up. After he unclogged the toilet, he noticed that the toilet paper had partially decomposed, but the wipes were completely intact. Concerned about a risk of expensive plumbing repairs, he stopped flushing the wipes." *Id*. ¶¶ 75-76. He claims that "[h]ad Defendants not misrepresented (by omission and commission) the true nature of their 'Flushable' Products, Plaintiff would not have purchased Defendants' product." *Id*. ¶ 77.

Plaintiff seeks to represent a class of California purchasers of the wipes from March 21, 2010 to the present. *Id*. ¶ 78. (The complaint contains a typo known to both sides that gives the

2

beginning date for the class period as March 21, 2014. Plaintiff has stated that he intends to correct this typo "at an appropriate juncture." *See* Dkt. No. 43 at 2 n.1. He will have that opportunity in response to this order.) The complaint asserts four claims against defendants: (1) violation of the Consumer Legal Remedies Act ("CLRA"), California Civil Code § 1750 et seq.; (2) false advertising in violation of California Business and Professions Code § 17500 et seq. ("FAL"); (3) fraud, deceit and/or misrepresentation; and (4) unfair, unlawful and deceptive trade practices in violation of California Business and Professions Code § 17200 et seq. ("UCL"). Dkt. No. 1-1 at 22-30. He asks the Court to grant him restitution and injunctive relief for his CLRA, FAL and UCL claims, and compensatory and punitive damages for his common law fraud claim. *Id*. at 30-31.

Plaintiff originally filed his complaint in the California Superior Court for the City and County of San Francisco, but P&G and Nehemiah jointly removed the action to this federal district court, invoking the Court's jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Dkt. No. 1 at 3. Defendants asserted that the Court has jurisdiction because the case "is (1) a proposed class action within the meaning of CAFA, in which (2) 'any member of a class of plaintiffs is a citizen of a State different from any defendant,' (3) the 'number of members of all proposed plaintiff classes in the aggregate is [not] less than 100,' and (4) 'the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs.'" *Id*. (citing 28 U.S.C. § 1332(d)(2), (d)(5)(B)). Plaintiff did not contest the removal.

Before the Court is P&G's motion to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6) and/or 9(b). Dkt. No. 25. Nehemiah joins in certain of P&G's arguments, and additionally moves to dismiss the complaint or strike the class allegations from it pursuant to Federal Rules of Civil Procedure 12(b)(6), 12(f), 23(c)(1)(A) and 23(c)(1)(D). Dkt. No. 26.

**DISCUSSION**

**I. LEGAL STANDARDS**

Defendants challenge the complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Federal courts are courts of limited jurisdiction, and the "case

3

or controversy" requirement of Article III of the U.S. Constitution "limits federal courts' subject matter jurisdiction by requiring, inter alia, that plaintiffs have standing . . . ." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121 (9th Cir. 2010). The "irreducible constitutional minimum of standing" contains three elements: (1) the plaintiff must prove that he suffered an "injury in fact," (2) the plaintiff must establish a causal connection by proving that his injury is fairly traceable to the challenged conduct of the defendant, and (3) the plaintiff must show that his injury will likely be redressed by a favorable decision. *Id*. at 1122. The argument that a plaintiff lacks standing is "properly raised in a Rule 12(b)(1) motion to dismiss." *Id*. The party opposing the motion bears the burden of establishing the Court's jurisdiction, and at the motion to dismiss stage, Article III standing is adequately demonstrated through allegations of "specific facts plausibly explaining" why the standing requirements are met. *Barnum Timber Co. v. Envtl. Prot. Agency*, 633 F.3d 894, 899 (9th Cir. 2011).

The other primary ground for defendants' dismissal motions is Federal Rule of Civil Procedure 12(b)(6). A complaint may be dismissed under Rule 12(b)(6) when it fails to meet Rule 8(a)'s requirement to make "a short and plain statement of the claim showing that the pleader is entitled to relief." To avoid dismissal under those rules, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly* at 556). "[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Iqbal*, 556 U.S. at 677).

**II.  PROCTER & GAMBLE'S MOTION TO DISMISS**

P&G frames its motion to dismiss primarily as lack of standing arguments under Rule 12(b)(1), although it alternatively argues that the same deficiencies can also be seen as a failure to state a claim under Rule 12(b)(6). *See*, *e.g.*, Dkt. No. 42 at 7 n.7. The Court focuses the analysis of P&G's arguments through the lens of standing.

### A. STANDING TO SEEK INJUNCTIVE RELIEF

The first question presented is whether plaintiff has standing to pursue injunctive relief at all in this case. The complaint seeks injunctive relief for three out of four claims, *i.e.*, the CLRA, UCL and FAL causes of action. *See* Dkt. No. 1-1 at 30; *see also*, *e.g.*, *id*. ¶ 125 ("Plaintiff seeks, on behalf of those similarly situated, an injunction to prohibit Defendants from continuing to engage in the unfair trade practices complained of herein.").

P&G argues that plaintiff lacks standing to seek this relief because he "does not, and cannot, allege that such relief will redress a real and immediate threat of repeated injury." Dkt. No. 25 at 12. P&G further argues that plaintiff has not alleged that he is likely "to purchase Kandoo Wipes again (or to purchase Freshmates for the first time)," and in any event, "there is . . . no basis for concluding that he is likely to be misled into making such purchases based on the advertising and labelling that he challenges." *Id*. Plaintiff argues in response that he has never stated that he will not purchase defendants' flushable wipes again and that he would in fact "love to purchase Defendants' Wipes if they were truly 'flushable.'" Dkt. No. 31-1 at 5.

The problem with plaintiff's response is that the Supreme Court and our Circuit Court have made clear that, in order to have Article III standing to seek an injunction in a federal court, a plaintiff must demonstrate "a sufficient likelihood that he will again be wronged in a similar way." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). *See also Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 948 (9th Cir. 2011) (quoting same language from *Lyons*, and further stating that a plaintiff "must establish a 'real and immediate threat of repeated injury'").

The holdings in these cases show why Mr. Machlan lacks standing under Article III to pursue injunctive relief in this federal district court. In *Lyons*, the Court held that the fact "[t]hat Lyons may have been illegally choked by the police on October 6, 1976, while presumably affording Lyons standing to claim damages against the individual officers and perhaps against the City, does nothing to establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part." 461 U.S. at 105. In *Chapman*, our Circuit Court held that "an ADA plaintiff can show a likelihood of future injury

5

1   when he intends to return to a noncompliant accommodation and is therefore likely to reencounter
2   a discriminatory architectural barrier." 631 F.3d at 950.

3         Here, the harm that is at the center of plaintiff's complaint is that he was allegedly
4   deceived about the true nature of the "flushable" wipes marketed and sold by defendants. He paid
5   a premium for those wipes because he thought "flushable" meant "suitable for flushing." But
6   plaintiff has filled his complaint with pages of allegations -- and photos which graphically
7   illustrate -- that he has since learned that those "flushable" wipes are not, in fact, suitable for
8   flushing. Even if plaintiff were to allege that he intends to buy these wipes again, and even if
9   plaintiff has continued and will continue to purchase those wipes daily, the nature of his alleged
10  injury, *i.e.*, deception, is such that he personally cannot be harmed in the same way again.

11        The Court consequently finds that, under controlling precedent, plaintiff does not have
12  Article III standing to seek an injunction from this federal district court prohibiting defendants
13  from continuing to engage in the conduct complained of in the complaint. Although the Court
14  agrees that this ruling goes against the broad remedial purposes behind California's consumer
15  protection statutes, *see*, *e.g.*, *In re Tobacco II Cases*, 46 Cal. 4th 298 (2009), the scope of the
16  Court's jurisdiction begins and ends with Article III, and it cannot hear a case that falls outside
17  that scope just because that would better serve public policy. The result in a California state court
18  would likely be different. As the Supreme Court stated in *Lyons*, "the state courts need not impose
19  the same standing or remedial requirements that govern federal court proceedings." 461 U.S. at
20  113. The UCL permits an injured plaintiff to obtain an injunction from the state court that
21  prevents future harm to other unsuspecting consumers by "stopping such practices in their tracks."
22  *In re Tobacco II*, 46 Cal. 4th at 320. But when the alleged unfair practice is deception, the
23  previously-deceived-but-now-enlightened plaintiff simply does not have standing under Article III
24  to ask a federal court to grant an injunction.

25        The question remains what the Court should do about the injunctive relief portions of
26  plaintiff's claims. The obvious options are dismissal or remand. In a slightly different context, in
27  *Lee v. American National Insurance Company*, 260 F.3d 997, 1007 (9th Cir. 2001), the Circuit
28  Court acknowledged the possibility of a "partial remand" (*i.e.*, a remand not of the entirety of an

1 action, but only portions thereof), but expressly "decline[d] to address the partial remand
2 alternative" in that case because the appellant had not adequately raised the issue on appeal.  The
3 Supreme Court also has not spoken on this precise issue.

4        Under the principles set forth in *Carnegie-Mellon University v. Cohill*, 484 U.S. 343
5 (1988), the Court finds that it has the discretion to order a remand rather than a dismissal of the
6 injunctive relief portions of plaintiff's claims.  This action was removed under the Class Action
7 Fairness Act, and there is no dispute about the removability of this action pursuant to that Act.
8 But for the reasons stated above, the Court finds that the injunctive relief portions of this case are
9 not justiciable -- and will never be justiciable -- by this Court.  There is therefore the possibility
10 that an action like this one could become stuck in a perpetual loop of (1) plaintiff's re-filing in
11 state court, followed by (2) removal by defendants and then (3) dismissal by this Court.  If such a
12 scenario were to play out, plaintiff's claims would likely be prevented from being adjudicated on
13 the merits, definitely so once the statute of limitations on plaintiff's claims expires.  Although an
14 order remanding rather than dismissing does not solve the potential problem altogether, it is an
15 important step in the right direction.  *See Carnegie-Mellon*, 484 U.S. at 351-52 ("a remand
16 generally will be preferable to a dismissal when the statute of limitations on the plaintiff's state-
17 law claims has expired" in which case "a dismissal will foreclose the plaintiff from litigating his
18 claims," a consequence that "may work injustice to the plaintiff").

19        Principles of fairness and comity also strongly support remand rather than dismissal.  As
20 the Supreme Court stated in *Carnegie-Mellon*:

> Even when the applicable statute of limitations has not expired, a remand may best promote the values of economy, convenience, fairness and comity.  Both litigants and States have an interest in the prompt and efficient resolution of controversies based on state law.  Any time a district court dismisses, rather than remands, a removed case involving pendent claims, the parties will have to refile their papers in state court, at some expense of time and money.  Moreover, the state court will have to reprocess the case, and this procedure will involve similar costs.  Dismissal of the claim therefore will increase both the expense and the time involved in enforcing state law.  Under the analysis set forth in *Gibbs*, this consequence, even taken alone, provides good reason to grant federal courts wide discretion to remand cases involving pendent claims when the exercise of pendent jurisdiction over such cases would be inappropriate.

484 U.S. at 353.

The Court finds that these considerations apply forcefully here. Injunctive relief is an important remedy under California's consumer protection laws. *See, e.g., In re Tobacco II*, 46 Cal. 4th at 319 ("the primary form of relief available under the UCL to protect consumers form unfair business practices is an injunction"). Allowing a defendant to undermine California's consumer protection statutes and defeat injunctive relief simply by removing a case from state court is an unnecessary affront to federal and state comity. This case was originally filed in a California state court by a California plaintiff on behalf of a putative class of California residents under California's state laws. A California state court ought to decide whether injunctive relief is appropriate for plaintiff's claims. Respect for comity and federalism compel that conclusion, and just tossing aside the state's injunction remedy because of this Court's limited jurisdiction is an unwarranted federal intrusion into California's interests and laws.

The portions of plaintiff's claims that seek injunctive relief under the UCL, FAL and CLRA are remanded to the California Superior Court for the City and County of San Francisco. The Court will implement appropriate case management and scheduling orders to ensure smooth sailing of this case in relation to the state action.

### B. STANDING AS TO PRODUCT NOT PURCHASED (CHARMIN FRESHMATES WIPES)

The Court next considers P&G's standing argument that is centered on the fact that plaintiff never bought the Charmin Freshmates product; he bought only the Pampers Kandoo product. On that basis, P&G argues that Machlan "lacks standing to prosecute any claims about P&G's own Freshmates product, which he did not buy." Dkt. No. 42 at 4. Plaintiff argues that there is a "sufficient similarity" between the product he did buy (Pampers wipes) and the product he did not (Charmin wipes), and that in any event, the question is one of typicality under Rule 23 which should be addressed further down the line at the class certification stage. Dkt. No. 31-1 at 10-14. These, too, are issues on which our Circuit has not yet spoken, and both sides acknowledge that district courts have hardly been uniform. *See*, *e.g.*, Dkt. No. 25 at 10 and Dkt. No. 31-1 at 10-14.

As an initial matter, the Court finds it appropriate -- and indeed, necessary -- to inquire whether plaintiff Mr. Machlan has standing to bring claims against P&G that challenge the Charmin Freshmates product which he did not buy. Mr. Machlan is the sole named plaintiff in this case, and "[a] class of plaintiffs does not have standing to sue if the named plaintiff does not have standing." *B.C. v. Plumas Unified Sch. Dist.*, 192 F.3d 1260, 1264 (9th Cir. 1999). *See also Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'").

The Court does not need to wade into the debate on whether sufficient or substantial similarity of products is enough to find standing here. Even assuming, without actually finding, that satisfying the substantially similar test articulated by some district courts would be enough to give Mr. Machlan standing to sue P&G for the Charmin wipes, the Court finds that he has failed to satisfy that test here. Comparing this case to two of the main cases relied on by Mr. Machlan shows why this is so. In *Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. C-11-2910 EMC, 2012 WL 2990766 (N.D. Cal. July 20, 2012), the named plaintiffs had purchased Dreyer's/Edy's ice cream products only, but the Court still permitted them to pursue misrepresentation claims relating to identical labelling on Haagen-Dazs products that they did not purchase. Significantly, the complaint alleged that the single defendant in that case "manufactures and distributes ice cream under the following brand names: Dreyer's, Edy's, and Haagen-Dazs." 2012 WL 2990766, at *1. In *Koh v. S.C. Johnson & Son, Inc.*, No. C-09-00927 RMW, 2010 WL 94265 (N.D. Cal. Jan. 6, 2010), the Court permitted plaintiff, who had purchased only the Windex cleaning product from defendant SCJ, also to pursue misrepresentation claims against SCJ for the Shout cleaning product that had the same alleged mislabeling. But again, it was alleged in that case that SCJ was the manufacturer for both Windex and Shout, *see* 2010 WL 94265, at *1, and the Court found it "notable" that the case was not one "in which plaintiff [was] asserting claims against defendants that never harmed him," *id.* at *3.

Here, P&G is alleged to have played a different role with respect to the Charmin wipes and the Pampers wipes. For the Pampers wipes -- the only product he purchased -- Nehemiah, a

9

"smaller manufacturer," is alleged to have held the license and to have "developed" the product line "in conjunction with P&G." Dkt. No. 1-1 ¶ 17.  P&G is alleged only to have "shared responsibility with Nehemiah for the manufacturing and/or marketing of the product." *Id*. ¶ 21.  For the Charmin wipes, in contrast, plaintiff alleges that "P&G manufactures and markets the Charmin Wipes." *Id*. ¶ 20.  The contrast between these allegations sets this case apart from those plaintiff has cited.  While the Court finds for the reasons below that plaintiff has alleged enough to proceed against P&G at this point for the Pampers wipes, the Court does not find that plaintiff may also proceed against P&G for the Charmin wipes, which he concedes he did not purchase.  His claims against P&G for the Pampers wipes and Charmin wipes, respectively, are not "substantially similar."  Whereas the former will largely raise questions about whether the "flushable" representation was false or misleading, the latter will also raise an additional dimension regarding what role P&G (as opposed to Nehemiah) played with respect to the wipes and the representations that were made.

Although plaintiff does not specifically say in his complaint, his claims that are based on the Charmin wipes appear to be directed at P&G only, as Nehemiah is not alleged to have played any role with respect to those wipes.  Those claims are dismissed with prejudice as to Mr. Machlan, but may be renewed by a new named plaintiff who did purchase Charmin wipes.

### C.  STANDING AGAINST P&G FOR PAMPERS KANDOO WIPES

With respect to the Pampers wipes which Mr. Machlan did purchase, P&G argues that Mr. Machlan lacks standing to pursue claims against P&G based on those wipes, too, despite the complaint's allegation that "since 2009, P&G had shared responsibility with Nehemiah for the manufacturing and/or marketing of the product." Dkt. No. 1-1 ¶ 21.  This is because, P&G argues, Mr. Machlan cannot establish Article III standing "by falsely alleging that P&G shared responsibility for manufacturing or marketing the product."  Dkt. No. 25 at 7.

P&G's argument that this allegation in the complaint is "false" is based on two license agreements that it has submitted in support of its motion.  *See* Dkt. No. 25 at 8 (license agreements are attached as Exhibits A and B to attorney declaration in support of motion).  P&G claims that the terms of these license agreements establish that "P&G has had *no* responsibility for the

10

development or manufacture of Kandoo Wipes since August 2009." *Id*. (emphasis in original). P&G additionally argues that the Court can properly consider these license agreements in resolving its 12(b)(1) arguments because "[t]his is not a case where the jurisdictional and substantive issues are 'so intertwined' that the Court may not resolve jurisdictional issues on a motion to dismiss." *Id*. at 7 n.4. P&G goes on to argue that "[w]hether P&G manufactured Kandoo Wipes or had responsibility for the challenged representations about Kandoo Wipes -- the issue relevant to this Court's jurisdiction over P&G -- is a discrete issue that has nothing to do with whether Kandoo Wipes were deceptively marketed." *Id*.

The Court finds these arguments misguided in several respects. This is indisputably an issue that goes directly to P&G's liability, and as such, it is <u>not</u> one that the Court can resolve on a 12(b)(1) motion. Indeed, as in *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1040 (9th Cir. 2004), a dismissal under 12(b)(1) would be improper "because the jurisdictional issue and substantive issues . . . are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits." Moreover, even assuming that the license agreements clearly establish that as a contractual matter, "P&G had no responsibility for the development or manufacture of Kandoo Wipes since August 2009," Dkt. No. 25 at 8, that would hardly establish as a factual matter that those terms were complied with. The Court also notes that even under P&G's own argument, it admits that it "ha[d] approval rights over products bearing a licensed mark and any advertising or promotional materials related to those products . . . ." *Id*. Consequently, the Court rejects P&G's argument that Mr. Machlan lacks standing to pursue claims against it that relate to his purchase of the Pampers Kandoo wipes.[1]

**D. INJURY-IN-FACT**

P&G argues that plaintiff has failed to sufficiently allege injury-in-fact because he "nowhere alleges that he was unable to flush the wipes" and he "notably fails to allege that the

---

[1] P&G also argues that "Machlan lacks standing to challenge representations about either product that allegedly appeared on the websites identified in the CAC." Dkt. No. 25 at 11. Plaintiff clarifies that he has described the websites only "to provide context and factual support for his allegations," and his claims are based on his reliance on the alleged misrepresentations "on the packaging." Dkt. No. 31-1 at 7. The Court consequently deems this argument as moot and rejects it on that basis.

11

Kandoo Wipes caused the clog." Dkt. No. 25 at 13. Plaintiff responds that he "does allege that the Wipes clogged his toilet" and that in any event, he is not challenging whether the wipes "actually flushed down his toilet" but rather, "whether the product is truly 'flushable,' i.e., suitable for flushing, as advertised." Dkt. No. 31-1 at 4.

The Court finds P&G's argument to be based on a hyper-literal and non-sensical reading of the complaint, and rejects it on that basis. Mr. Machlan has alleged that he "immediately had problems flushing the wipes, as the toilet clogged and backed up. After he unclogged the toilet, he noticed that the toilet paper had partially decomposed, but the wipes were completely intact." Dkt. No. 1-1 ¶ 75. P&G's argument consequently fails on its own terms.

Mr. Machlan's claim is that the Pampers wipes were represented to be "flushable," but he could not flush the wipes down without the wipes clogging his toilet, and he would not have purchased and paid a premium for this product had it not been for the alleged misrepresentation. At this stage, that is enough. *See*, *e.g.*, *Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013).

### III. NEHEMIAH MANUFACTURING COMPANY'S MOTION TO DISMISS

Defendant Nehemiah has filed a separate motion to dismiss which requests the Court to dismiss or strike the class action allegations in the complaint. Dkt. No. 23. The Court, however, finds Nehemiah's arguments to be perfunctory and premature, and denies them on that basis. The denial is, of course, without prejudice to Nehemiah renewing the same arguments at a later stage of this litigation.

### CONCLUSION

The portions of plaintiff's claims under the UCL, FAL and CLRA that seek injunctive relief are remanded to the California Superior Court for the City and County of San Francisco.

For the remainder of plaintiff's action, P&G's motion is granted with respect to the Charmin Freshmates wipes, but defendants' motions are denied in all other respects. The dismissal of plaintiff's claims for the Charmin wipes is with prejudice as to Mr. Machlan, but without prejudice to renewal by a new named plaintiff who did purchase the Charmin wipes.

In light of these rulings, the Court vacates the case management deadlines previously set in this case and sets a case management conference for January 28, 2014 at 1:30 p.m. At that time,

1   the parties should be prepared to discuss with the Court, among other things, (1) whether this
2   Court should stay this action in favor of the parallel state court action, especially in light of the
3   fact that the "primary form of relief available under the UCL" is an injunction, to which restitution
4   is merely "ancillary," *see In re Tobacco II*, 46 Cal. 4th at 319; (2) whether plaintiff intends to
5   amend the complaint in this federal action to add a plaintiff who did purchase the Charmin wipes,
6   among other things; and (3) any other suggestions for most efficiently resolving plaintiff's claims
7   on their merits, with the minimum amount of duplication and possibility of conflict between the
8   state and federal courts.

**IT IS SO ORDERED**.

Dated: January 6, 2015

_____
JAMES DONATO
United States District Judge

13